IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

HOMERO BUSTOS FLORES,

Defendant.

No. CR 02-3015-MWB

MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION UNDER 28
U.S.C. § 2255 TO VACATE, SET
ASIDE, OR CORRECT SENTENCE

_____

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. Charges, Conviction, Sentencing, And Appeal . . . . . . . . . . . . . . . . . 2
   B. The Motion To Vacate Sentence . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   A. Standards For Relief Pursuant To § 2255 . . . . . . . . . . . . . . . . . . . . 6
      1. Relief on the merits of the claims . . . . . . . . . . . . . . . . . . . . 6
      2. Entitlement to an evidentiary hearing . . . . . . . . . . . . . . . . . . 9
   B. Ineffective Assistance Of Counsel . . . . . . . . . . . . . . . . . . . . . . . 10
      1. Applicable standards . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      2. Ineffective assistance of trial counsel . . . . . . . . . . . . . . . . . 13
         a. Denial of right to testify . . . . . . . . . . . . . . . . . . . 13
         b. Failure to challenge drug quantity calculation . . . . . . 18
         c. Failure to raise an Apprendi challenge . . . . . . . . . . 19
         d. Failure to timely object to safety-valve ineligibility . . . 21
      3. Ineffective assistance of appellate counsel . . . . . . . . . . . . . 26
   C. Imposition Of An Illegal Sentence . . . . . . . . . . . . . . . . . . . . . . . 26
      1. "Cause and prejudice" . . . . . . . . . . . . . . . . . . . . . . . . . . 27
      2. The merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Thls matter comes before the court pursuant to defendant Homero Bustos Flores's August 8, 2005, *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 125). In that motion, Flores seeks relief from his sentence on a drug-trafficking charge based on ineffective assistance by his trial and appellate counsel, in several respects, and imposition by the court of a sentence in violation of the law. The parties have briefed the issues presented and the court finds the motion ripe for disposition.

## I. INTRODUCTION

### A. Charges, Conviction, Sentencing, And Appeal

In an Indictment handed down on March 7, 2002, defendant Flores and a co-defendant were each charged with one count of possessing, with intent to distribute, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). The trial court denied Flores's motion to sever, and trial of both defendants began on January 13, 2003. The evidence presented at trial included the discovery by law enforcement officers of 1,213.3 grams of a methamphetamine mixture in three packages in a spare tire of a vehicle in which Flores and his co-defendant were traveling. Flores did not testify at the trial, even though there were repeated statements by his co-defendant's counsel that his co-defendant would testify, that the content of the co-defendant's testimony would be to cast blame on Flores, and the co-defendant did, indeed, so testify at trial. At no time was there

any suggestion on the record that Flores wished or intended to testify, even in response to indications of his co-defendant's intention to testify or in response to his co-defendant's actual testimony. Instead, Flores's counsel only cross-examined the co-defendant, albeit extensively. Flores's counsel then rested without presenting any evidence, and without any indication from Flores that he wished to testify. Flores's counsel also did not engage in any of the further surrebuttal examination and cross-examination in which the government and his co-defendant engaged. On January 15, 2003, a jury convicted both Flores and his co-defendant of the charged offense, finding that the offense involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine for which Flores could be held responsible.

Flores was sentenced on April 18, 2003. The 1,213.3 grams of methamphetamine mixture for which Flores was held responsible by the jury would have resulted in an offense level of 32. However, the PSIR calculated Flores's offense level based on an Official Report of the Iowa Department of Public Safety DCI Criminalistics Laboratory, which showed the following quantities and purities for the three packages of the methamphetamine mixture found in the vehicle in which Flores was traveling: 410 grams net weight, methamphetamine = 57% (calculated as the hydrochloride salt); 408.3 grams net weight, methamphetamine = 55% (calculated as the hydrochloride salt); 395 grams net weight, methamphetamine = 60% (calculated as the hydrochloride salt). These calculations resulted in a drug quantity equivalent to 694.165 grams of actual (pure) methamphetamine. Therefore, the PSIR calculated an offense level of 36 based on the quantity of actual (pure) methamphetamine, rather than an offense level of 32 based solely on the total quantity of methamphetamine mixture. During his sentencing, Flores's counsel withdrew his original challenge to the calculation of Flores's offense level, because counsel conceded that a "bump-up" in the offense level from 32 to 36 was applicable on

the basis of the quantity of actual (pure) methamphetamine involved. Sentencing Transcript at 3. Therefore, the government and the defense agreed that the total offense level based on drug quantity and purity was level 36, criminal history category 1, which resulted in a Guidelines sentencing range of 188 to 235 months. *Id.* at 2-3.

Although defense counsel did not challenge the offense level based on drug quantity, he did assert during sentencing, albeit without having filed a timely objection, that the PSIR was incorrect in failing to identify Flores as eligible for a "safety valve" reduction pursuant to 18 U.S.C. § 3553(f) and U.S.S.G § 5C1.2(a). Although the objection was untimely, the court nevertheless considered it. The prosecutor asserted that he was prejudiced by the untimely objection, because he had not brought the case agent to testify about Flores's debriefing. However, the prosecutor, who had also been present at the debriefing, also argued that Flores had not been completely truthful during his debriefing, because his own notes on the debriefing reflected that Flores had denied any knowledge at all of the methamphetamine in the vehicle and said that it was all the co-defendant's. *Id.* at 5. Neither Flores nor his counsel disputed the prosecutor's characterization of Flores's debriefing at the time, although counsel did dispute the court's characterization of Flores's debriefing as "I know nothing." *Id.* at 6-7. Counsel also argued that Flores had debriefed truthfully and completely. *Id.* The court rejected this argument, and found no reason to continue the sentencing to receive evidence concerning Flores's debriefing, because the jury had found Flores guilty beyond a reasonable doubt of possessing methamphetamine with intent to distribute it, which the court believed established that Flores's debriefing statement was not truthful and complete. *Id.* at 7-8. More specifically, the court stated, "[Y]our untimely objection to the failure to find the defendant safety-valve eligible is denied not based on the untimeliness but based on the fact that you can't proffer any evidence that would change my mind." *Id.* at 8. The parties then agreed that rejection

4

of safety-valve eligibility brought matters back to a total offense level of 36, criminal history category 1, and Guidelines sentencing range of 188 to 235 months. *Id.* at 9-10. After Flores's allocution, the court sentenced Flores to 188 months of imprisonment. *Id.* at 13.

Flores appealed on the single ground that the district court erred when it denied his motion to sever his trial from his co-defendant's. *See United States v. Flores*, 362 F.3d 1030, 1039 (8th Cir. 2004). In an opinion filed April 2, 2004, the Eighth Circuit Court of Appeals noted that Flores had also asserted in the summary of the case in his brief that the court had improperly denied his request for safety-valve eligibility, but that he did not mention that issue in the argument section of his brief, thereby waiving the issue. *Id.* at 1039 n.3. The Eighth Circuit Court of Appeals rejected Flores's appeal on the sole issue properly presented, and affirmed his conviction and sentence. *Id.* at 1039-42. The judgment of the Eighth Circuit Court of Appeals was conveyed to this court on May 21, 2004 (docket no. 113).

## B. The Motion To Vacate Sentence

Flores's *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 125) followed on August 8, 2005.[1] In his motion, Flores asserted ineffective assistance of his trial and appellate counsel and imposition of a sentence in violation of the law. The court filed an Initial Review Order on October 4, 2005 (docket no. 127), in which the court set a briefing schedule on Flores's motion.

---

[1] Flores asserts that his motion is timely, in that it was filed less than one year after the expiration of his time to file a petition for writ of certiorari to the United States Supreme Court, and the government does not challenge that assertion.

Flores filed his brief on November 21, 2005 (docket no. 136). In his brief, Flores asserts the following grounds for relief: (1) ineffective assistance of trial counsel, consisting of (a) denial of his right to testify; (b) failure to challenge the drug quantity calculation; (c) failure to raise a challenge pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), at sentencing; and (d) failure to make a timely objection to omission of safety-valve eligibility in the PSIR; (2) ineffective assistance of appellate counsel, who was the same as his trial counsel, consisting of failure to raise issues (1)(b), (1)(c), and (1)(d); and (3) imposition by the trial court of a sentence in violation of Flores's Sixth Amendment rights as established by *Apprendi*, consisting of judicial fact-finding regarding drug quantity and enhancement of his sentence based upon such improper fact-finding. Flores asserts ineffective assistance of his trial counsel as "cause and prejudice" for his procedural default of the *Apprendi* violations in his sentencing. Finally, Flores asserts that he is entitled to an evidentiary hearing on his claims. The government resisted each of Flores's grounds for relief, as well as his request for an evidentiary hearing, in a response filed January 17, 2006 (docket no. 144). Flores's reply followed on February 6, 2006 (docket no. 145).

The court will consider each of Flores's asserted grounds for relief pursuant to § 2255 after considering the standards applicable to his petition, generally.

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To § 2255

#### 1. Relief on the merits of the claims

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be

6

released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*). On the other hand,

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *see Becht v. United States*,

403 F.3d 541, 545 (8th Cir. 2005). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)).

However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

### 2. Entitlement to an evidentiary hearing

As the Eighth Circuit Court of Appeals recently explained,

> A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255. We review the district court's decision not to hold an evidentiary hearing for an abuse of discretion. *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001). "That standard is somewhat misleading, however, because review of the determination that no hearing was required obligates us to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo." *Id.* Therefore, in order to determine if [a movant under § 2255] is entitled to remand for an evidentiary hearing, we must consider the validity of his [claim for § 2255 relief]. *Id.*

*United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005). More specifically, "A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, ___ F.3d ___, ___, 2006 WL 1389610, *1 (8th Cir. May 23, 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted). "In some cases, the clarity of the existing record on appeal makes an evidentiary hearing unnecessary, [but] [a]bsent such clarity, an evidentiary hearing is required." *Latorre v. United States*, 193 F.3d 1035, 1038 (8th Cir. 1999). At the evidentiary hearing, if one is required, the defendant must establish that,

"in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623; *accord Latorre*, 193 F.3d at 1038 (quoting this standard from *Bousley*).

## B. Ineffective Assistance Of Counsel

The majority of Flores's claims for § 2255 relief are based on the alleged ineffective assistance of his trial and appellate counsel. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). On the other hand, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, the analysis of Flores's claims for § 2255 relief begins with consideration of the standards applicable to his various "ineffective assistance" claims.

*1.    Applicable standards*

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established:  post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'"  *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the  movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"  *United States v. Rice*, ___ F.3d ___, ___, 2006 WL 1458217, *8 (8th Cir. May 30, 2006) (quoting *Strickland*, 466 U.S. at 687).  That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'"  *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688).  However, there are two substantial impediments to making such a showing.  First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'"  *Rice*, ___ F.3d at ___, 2006 WL 1458217 at *8 (quoting *Strickland*, 466 U.S. at 690).  Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at

877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was deficient, however, the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, ___ F.3d at ___, 2006 WL 1458217 at *8 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). Although these two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997).

Flores contends that his counsel, who both tried and appealed his case, was ineffective in several respects. The court will consider each incidence of alleged ineffectiveness in turn.

*2.    Ineffective assistance of trial counsel*

*a.    Denial of right to testify*

First, Flores's claims that his trial counsel was ineffective by denying him his right to testify in his own trial.  Flores does not contend that counsel failed to advise him of his right to testify; rather, he asserts that, despite his repeated assertions that he wanted to testify, counsel never called him as a witness on his own behalf during his trial.

A criminal defendant has a fundamental constitutional guarantee to testify on his own behalf.  *Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998).  That right can only be waived by the defendant himself. *See id.* at 898; *United States v. Bernloehr*, 833 F.2d 749, 751 (8th Cir. 1987); *see also Harris v. New York*, 401 U.S. 222, 225 (1971). However, where the record clearly supports that counsel advised the defendant of his right to testify, but advised the defendant *not* to do so, and the record shows, further, that the defendant accepted that advice, for example, by remaining silent when counsel rested without calling the defendant to testify, the court may find that the defendant has waived the right to testify.  *Frey*, 151 F.3d at 898.  To prevent a waiver, the Eighth Circuit Court of Appeals "stressed that under such circumstances the defendant must act 'affirmatively' rather than apparently 'acquiesc[ing] in his counsel's advice that he not testify, and then later claim[ing] that his will to testify was overcome.'"  *Id.* (citing *Bernloehr*, 833 F.2d at 751, with internal quotation omitted).  "[P]ostconviction dissatisfaction with this decision" does not establish a violation of the right to testify.  *Id.*

In *Frey*, the defendant's counsel had informed the defendant of his right to testify, but had advised him against doing so, and counsel had understood the defendant to have "consented" to his advice.  *Id.*  The defendant had also been informed on the record that he had a right to testify and a right not to testify, and although he was a "sophisticated businessman," he had voiced no objection when his counsel rested without calling him to

13

testify. *Id.* The court found that the defendant, "after receiving the advice of counsel, chose to exercise his constitutional right not to testify," and that he had voluntarily and knowingly waived his constitutional right to testify. *Id.* Similarly, in *Bernloehr*, the Eighth Circuit Court of Appeals found that the defendant, "an apparently mature and sophisticated businessman, represented by able and experience counsel, made no objection when his counsel rested without calling [him] to the stand." *Bernloehr*, 833 F.2d at 751-52. The court found that the defendant had failed to act "affirmatively" to assert his right to testify, when his counsel rested without calling him, finding that "[t]he defendant may not, as Bernloehr did, indicate at trial his apparent acquiescence in his counsel's advice that he not testify, and then later claim that his will to testify was 'overcome.'" *Id.* at 752. The court also found that nothing in the record supported a claim that the defendant was "muzzled," such that he could not assert his desire to testify. *Id.* Finally, the court rejected the defendant's argument that the court should have inquired into whether the defendant was voluntarily relinquishing his right to testify, at least where there was evidence of a conflict between the defendant and his counsel, because the court found no such conflict was apparent on the record. *Id.*

Here, it is clear that Flores knew of his right to testify, and even discussed that right with counsel, but that counsel advised him against testifying, because that is precisely what Flores asserts happened. *Cf. Frey*, 151 F.3d at 898. The court cannot say that counsel's advice that Flores not testify "'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 522 (quoting *Strickland*, 466 U.S. at 688). Flores's intended testimony, as he now characterizes it, would have been little more than a challenge to the credibility of the arresting officers' and the co-defendant's versions of events, and if a jury disbelieved Flores's version—and from this court's recollection and review of the record, the jury almost certainly would have disbelieved Flores's version—Flores's defense could

have been irreparably damaged. Under the circumstances, Flores's counsel's advice that Flores not testify was well within the realm of counsel's assessment of effective trial strategy. *See Rice*, ___ F.3d at ___, 2006 WL 1458217 at *8 ("'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'") (quoting *Strickland*, 466 U.S. at 690). Thus, counsel's advice that Flores not testify would not satisfy the "deficient performance" prong of an "ineffective assistance" claim. *See Ledezma-Rodriguez*, 423 F.3d at 836 (to prove an "ineffective assistance" claim, the movant must first show that counsel's performance was "deficient"); *Davis*, 423 F.3d at 877 (same).

However, Flores contends that he insisted on testifying, but that counsel rested his defense without calling him. Assuming that Flores could show "deficient performance" if he could show that counsel, in fact, coerced him into not testifying or overcame his will to testify, or even simply refused to call him when he insisted on testifying, *cf. Frey*, 151 F.3d at 898-99 (suggesting that there is no waiver of the right to testify if the defendant's will to testify was overcome by counsel, and that counsel might have been "ineffective" if counsel had not explained to the defendant why he should not testify or misled him into believing that the ultimate decision whether or not to testify would be made by counsel); *Bernloehr*, 833 F.2d at 752 (also recognizing that there may be no waiver if the defendant's will to testify was overcome or if he was "muzzled"), Flores does not assert that his will to testify was overcome, nor does the record suggest that counsel somehow coerced Flores into not testifying or that Flores was "muzzled." Flores had an interpreter throughout his trial, but never indicated to the court at any time on the record that he wished to testify, contrary to his counsel's representations that he had no evidence to present. Instead, the record demonstrates Flores's knowing and voluntary waiver of his right to testify by "acquiescence" in counsel's advice not to testify. *Id.* at 898 (the

defendant must "affirmatively" assert his right to testify; he cannot "acquiesce" in counsel's decision to rest without calling him, then claim that his will to testify was overcome); *Berhloehr*, 833 F.2d at 752 (same). Indeed, there is no hint on the record of any conflict between counsel and Flores concerning whether or not he should testify, which might have obligated the court to inquire of Flores directly whether he was waiving his right to testify, when counsel stated his intention to rest without calling any witnesses. *Cf. Bernloehr*, 833 F.2d at 752 (finding no obligation on the court to inquire directly of the defendant whether the defendant was waiving his right to testify, when there was no evidence on the record of any conflict between the defendant and his counsel on that issue).

Because the court has found that Flores's knowingly and voluntarily waived his right to testify, by acquiescing when counsel rested his case without calling him, and that counsel did not act ineffectively in advising Flores to make such a waiver or otherwise impede his right to testify, the court need not consider the "prejudice" prong of Flores's "ineffective assistance" claim. *Walker*, 324 F.3d at 1040. However, the court finds that Flores cannot show any "prejudice," even if the court could find "deficient performance" by counsel in advising Flores not to testify. This is so, because even had Flores offered the testimony he now asserts he would have given—which merely challenges the credibility of the law enforcement officers' version of events and, as such, is contrary to all other evidence in the record—there is simply no "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, ___ F.3d at ___, 2006 WL 1458217 at *8 (quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). While Flores may not be happy now with his decision not to testify, Flores has offered no more than a shadow of a possibility that counsel's advice that he should not testify could have had "'some conceivable effect on the

outcome of the proceeding,'" which simply is not enough. *Pfau*, 409 F.3d at 939 (quoting *Strickland*, 466 U.S. at 693); *see also Frey*, 151 F.3d at 898 ("postconviction dissatisfaction with this decision" not to testify does not establish a violation of the right to testify).

Finally, as to this issue, the court finds that the record is sufficiently clear that no evidentiary hearing is required. *See Latorre*, 193 F.3d at 1038 ("In some cases, the clarity of the existing record on appeal makes an evidentiary hearing unnecessary, [but] [a]bsent such clarity, an evidentiary hearing is required."). The record, instead, "conclusively show[s] that [Flores] is entitled to no relief." 28 U.S.C. § 2255; *Ledezma-Rodriguez*, 423 F.3d at 835-36. This is so, because, as explained above, the record shows that some of Flores's allegations, such as his allegations that he wanted to testify, "'accepted as true, would not entitle' [him] to relief," and that the remainder of his allegations, such as his allegations that the result would have been different had he been allowed to offer his intended testimony, "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster*, ___ F.3d at ___, 2006 WL 1389610 at *1 (quoting *Sanders*, 341 F.3d at 722, with citation and quotation omitted).

This ground for relief will be denied, because even though counsel advised Flores not to testify and did not call him to testify, Flores's sentence was not imposed in violation of the Constitution or laws of the United States, because counsel's advice that Flores not testify did not constitute "deficient performance," there is no allegation that counsel coerced or misled Flores into not testifying, and Flores was not "prejudiced" by his counsel's conduct, because the testimony he now contends he would have offered would have been extremely unlikely to alter the result in his case. *See* 28 U.S.C. § 2255 (first ground for relief from a federal sentence).

### b.    Failure to challenge drug quantity calculation

Next, Flores asserts that his trial counsel was ineffective for failing to challenge the drug quantity calculation in the PSIR, and that counsel's failure to make such a challenge prejudiced him, because he was sentenced to an offense level of 36, when the quantity of methamphetamine mixture that the jury found was involved the offense would only have resulted in an offense level of 32.  The court disagrees.

As explained above, the record evidence makes clear that the 1,213.3 grams of methamphetamine mixture involved in the charge against Flores was of sufficient purity that it resulted in a drug quantity equivalent to 694.165 grams of actual (pure) methamphetamine.  Note B to the Drug Quantity Table in U.S.S.G. § 2D1.1, which sets out the offense levels applicable to various quantities of controlled substances, explains, "In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, *or* the offense level determined by the weight of the  . . . methamphetamine (actual), whichever is greater." U.S.S.G. § 2D1.1, Note B (emphasis added).  Thus, the PSIR correctly calculated Flores's offense level based on "the weight of the . . . methamphetamine (actual)," in this case, offense level 36 for "at least 500 G but less that 1.5 KG of Methamphetamine (actual)." U.S.S.G. § 2D1.1, Drug Quantity Table.

Because the PSIR calculation was correct, Flores's counsel was not ineffective in withdrawing his objection to the offense level in the PSIR or in conceding that a "bump-up" in the offense level from 32 to 36 was applicable, because of the purity of the methamphetamine.  Sentencing Transcript at 3; *see Ledezma-Rodriguez*, 423 F.3d at 836 (to prove an "ineffective assistance" claim, the movant must first show that counsel's performance was "deficient"); *Davis*, 423 F.3d at 877 (same).  Because there was no "deficient performance," the court need not consider the "prejudice" prong for this

"ineffective assistance" claim. *Walker*, 324 F.3d at 1040. Nor is any evidentiary hearing required on this issue, because the record "conclusively show[s] that [Flores] is entitled to no relief." 28 U.S.C. § 2255; *Ledezma-Rodriguez*, 423 F.3d at 835-36.

This ground for relief will be denied, because there was no ineffective assistance of counsel in failure to challenge the drug quantity calculation in the PSIR, so that Flores's sentence was not imposed in violation of the Constitution or laws of the United States because of such ineffective assistance. *See* 28 U.S.C. § 2255 (first ground for relief from a federal sentence).

### c.     *Failure to raise an* Apprendi *challenge*

Next, Flores asserts that his trial counsel was ineffective for failing to raise a challenge at sentencing based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Supreme Court held that a sentence may not be imposed upon a defendant that is in excess of the maximum statutory sentence allowed by the jury's findings. More specifically, Flores claims that the jury only found him guilty of an offense involving 500 grams or more of a methamphetamine mixture, not 1,213.3 grams of methamphetamine mixture or 694.165 grams of actual (pure) methamphetamine, so that his counsel should have objected to imposition of a Guidelines sentence based on these latter quantities instead of the 500 grams of methamphetamine mixture found by the jury. Flores asserts that, although no court had so held at the time of his sentencing, the argument that *Apprendi* was applicable to the Sentencing Guidelines, not merely to statutory maximum sentences, was not so novel that counsel could neglect to raise it. He also contends that *United States v. Booker*, 543 U.S. 220 (2005), is applicable to the extent that it "clarifies" what *Apprendi* meant. The government asserts that this is really a "*Booker* challenge," but that such a challenge is foreclosed by *United States v. McKay*, 431 F.3d 1085 (8th Cir. 2005).

This ground also affords Flores no relief. First, *Apprendi* did not, on its face, address judicial fact-finding that establishes the maximum *Guidelines sentencing range*, because it was cast only in terms of a constitutional requirement for jury determination of facts that establish the maximum *statutory* penalty. *See Apprendi*, 530 U.S. at 490. The decision in *Blakely v. Washington*, 542 U.S. 296 (2004), which applied *Apprendi* to invalidate that part of Washington State's sentencing scheme that allowed a judge to find facts increasing the defendant's penalty, had not been handed down at the time of Flores's sentencing. The court cannot find that counsel was constitutionally ineffective in failing to raise what Flores concedes was a novel constitutional argument concerning judicial fact-finding under mandatory Sentencing Guidelines, based on *Apprendi*, because "[w]hile the Constitution guarantees criminal defendants a competent attorney, it 'does not insure that defense counsel will recognize and raise every conceivable constitutional claim.'" *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005) (quoting *Engle v. Isaac*, 456 U.S. 107, 134 (1982)).[2]

Thus, this claim fails on the first prong of the "ineffective assistance" analysis, because counsel's performance was not "deficient." *See Ledezma-Rodriguez*, 423 F.3d

---

[2]The court does not agree with the government that *United States v. McKay*, 431 F.3d 1085 (8th Cir. 2005), forecloses this ground for relief. *McKay* reiterates that the Eighth Circuit Court of Appeals has rejected the argument that the rights of defendants sentenced under advisory guidelines are violated by judicial findings of drug quantity by the preponderance of the evidence. *See McKay*, 431 F.3d at 1094 (citing *United States v. Pirani*, 406 F.3d 543, 551 n.4 (8th Cir. 2005), as "squarely reject[ing]" such an argument). *McKay* is not applicable, because Flores was sentenced under the *mandatory* Sentencing Guidelines. On the other hand, the court does agree with the government that Flores's argument is a "back door" attempt to make *Booker* applicable to his case, but the Eighth Circuit Court of Appeals has held that *Booker* is not retroactively applicable to final convictions on collateral review. *Never Misses A Shot v. United States*, 413 F.3d 781, 783-84 (8th Cir. 2005) (*per curiam*).

at 836 (to prove an "ineffective assistance" claim, the movant must first show that counsel's performance was "deficient"); *Davis*, 423 F.3d at 877 (same). Because there was no "deficient performance," the court need not consider the "prejudice" prong for this "ineffective assistance" claim. *Walker*, 324 F.3d at 1040. Nor is any evidentiary hearing required on this issue, because the record "conclusively show[s] that [Flores] is entitled to no relief" on this claim. 28 U.S.C. § 2255; *Ledezma-Rodriguez*, 423 F.3d at 835-36.

### d. *Failure to timely object to safety-valve ineligibility*

Flores's last claim of ineffective assistance of his trial counsel is that counsel failed to make a timely objection to omission of safety-valve eligibility in the PSIR. Although Flores acknowledges that the court considered counsel's safety-valve argument, even though it was not timely, and rejected that argument on the merits, he contends that, had counsel timely raised the issue, he would have had a fair opportunity to have the court consider properly his application for the safety valve. He contends that his denial of guilty knowledge about the offense, even after conviction, does not make him ineligible for the safety valve as a matter of law. He contends, further, that he never made, and the court never found that he made, any false statement in his debriefing or in trial testimony, because he did not testify. Thus, he contends that he was prejudiced by counsel's deficient performance, because he could have established his eligibility for the safety valve. The government contends that Flores was not prejudiced, because the court did consider his safety valve eligibility and properly rejected his arguments. The government also asserts that Flores has failed to carry his burden to establish that he was eligible for the safety valve. In reply, Flores argues that he met his burden by showing that he gave as full a statement as the government requested, but that the government then bore, but did not carry, the burden of showing that the statement was not truthful or complete.

21

As the Eighth Circuit Court of Appeals recently reiterated,

> "The 'safety valve' provision permits a district court to impose on a drug defendant a more lenient sentence within the otherwise applicable guidelines range if certain conditions are met." *[United States v.] O'Dell*, 204 F.3d [829,] 838 [(8th Cir. 2000)]. In order to qualify for safety-valve relief, a defendant must show, by a preponderance of the evidence, that:
>
>> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>>
>> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>>
>> (3) the offense did not result in death or serious bodily injury to any person;
>>
>> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>>
>> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.
>
> 18 U.S.C. § 3553(f).

*United States v. Soto*, ___ F.3d ___, ___, 2006 WL 1491728, *2 (8th Cir. June 1, 2006); *see also* U.S.S.G. § 5C1.2 (identifying the same five factors for safety-valve eligibility).

The defendant has the burden to prove that he qualified for a safety-valve sentencing reduction under the statute and Sentencing Guidelines. *Id.* at ___, 2006 WL 1491728 at *1.

The fifth requirement, debriefing, is the one particularly at issue here. As to this requirement,

> A defendant is not entitled to safety-valve relief when he or she just conveys the "basic facts of his [or her] crime." *United States v. Alarcon-Garcia*, 327 F.3d 719, 723 (8th Cir. 2003). A defendant must prove "through affirmative conduct, that he [or she] gave the Government truthful information and evidence about the relevant crimes before sentencing." *United States v. Romo*, 81 F.3d 84, 85-86 (8th Cir. 1996).

*Soto*, ___ F.3d at ___, 2006 WL 1491728 at *2. In other words, qualifying for a safety-valve reduction "require[s] more than accepting responsibility for [the defendant's] own acts." *United States v. Conde*, 178 F.3d 616, 622 (2d Cir. 1999). "'In making its assessment of the truthfulness of a safety valve proffer, the district court is entitled to draw reasonable inferences from the evidence.'" *Soto*, ___ F.3d at ___, 2006 WL 1491728 at *2 (*United States v. Alvarado-Rivera*, 412 F.3d 942, 948 (8th Cir. 2005) (*en banc*)).

Although Flores is correct that the Ninth Circuit Court of Appeals decided in *United States v. Sherpa*, 110 F.3d 656 (9th Cir. 1996), that a defendant could be truthful and provide complete disclosures, so as to qualify for the safety valve, despite his continued claims of innocence after conviction by a jury, *Sherpa*, 110 F.3d at 660-61, other courts do not necessarily agree, *see United States v. Reynoso*, 239 F.3d 143, 149-50 (2d Cir. 2000) (calling *Sherpa* "wrongly decided" and declining to follow it), and so far as this court can tell, the Eighth Circuit Court of Appeals has not adopted the view of the Ninth on this issue. Rather, what is clear is that the Eighth Circuit Court of Appeals has concluded that a district court had not clearly erred in concluding, based on the record and

the court's own credibility assessments, that the defendant had not been "completely truthful" in his debriefing, where the defendant continued to maintain his innocence and to deny his involvement in the essentials of the conduct of which the jury had found him guilty. *See O'Dell*, 204 F.3d at 838.

It is tempting to adopt the government's view that, whether or not counsel's performance was "deficient," there was no "prejudice, where, as here, counsel failed to make a timely objection to the omission of a safety-valve calculation from the defendant's sentence, but the court nevertheless considered the safety-valve reduction. *See Boysiewick*, 179 F.3d at 620 (courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice"). Certainly, the court intended to mitigate counsel's error. However, the precise prejudice that Flores has asserted is that counsel's failure to make a *timely* assertion of his safety-valve eligibility prevented him from making what would otherwise have been an *adequate* showing of eligibility, so that the prejudice could not be fully mitigated by the court's consideration of his safety-valve eligibility at sentencing on an incomplete record. Had Flores come forward with some evidence that his debriefing had been both complete and truthful, his argument might have merit. *Soto*, ___ F.3d at ___, 2006 WL 1491728 at *1 (the defendant has the burden to prove that he qualified for a safety-valve sentencing reduction under the statute and Sentencing Guidelines). However, even now, he has merely asserted that his denials of knowledge and involvement in the crime were truthful and complete in the face of a jury's verdict beyond a reasonable doubt that he knowingly participated in the crime; at most, he has added only conclusory assertions that this is not all that he provided in debriefing. Where this remains the sum and substance of what he asserts he said in his debriefing, this court properly concluded—albeit only implicitly at sentencing—that he had not been "truthful" and "complete," where his assertions in his debriefing were contrary to the jury's verdict.

*Cf. Soto*, ___ F.3d at ___, 2006 WL 1491728 at *2 (conveying the "basic facts" of the defendant's crime is not enough to qualify for the safety valve, because the defendant must prove "through affirmative conduct," that he gave the government truthful information and evidence about the relevant crimes before sentencing) (internal quotation marks and citations omitted). The court now confirms that conclusion explicitly, because a reasonable inference from the difference between Flores's continued denials of knowledge of and involvement in the charged offense and the jury's verdict (and, indeed, the court's own view of the evidence at trial), is that Flores's debriefing statement was not complete or completely truthful. *Id.* (the court may rely on reasonable inferences from the evidence to determine truthfulness); *O'Dell*, 204 F.3d at 838 (the district court had not clearly erred in concluding, based on the record and the court's own credibility assessments, that the defendant had not been "completely truthful" in his debriefing, where the defendant continued to maintain his innocence and to deny his involvement in the essentials of the conduct of which the jury had found him guilty).

Under the circumstances, Flores's claim that counsel was ineffective in failing to make a *timely* challenge to the omission of a safety-valve reduction fails on the "prejudice" prong of the "ineffective assistance" analysis. *See Ledezma-Rodriguez*, 423 F.3d at 836 (to prove an "ineffective assistance" claim, the movant must show both that counsel's performance was "deficient" and that he was "prejudiced" by the deficient performance); *Davis*, 423 F.3d at 877 (same). Nor is any evidentiary hearing required on this issue, because the record "conclusively show[s] that [Flores] is entitled to no relief," 28 U.S.C. § 2255; *Ledezma-Rodriguez*, 423 F.3d at 835-36, and/or that his "'allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Buster*, ___ F.3d at ___, 2006 WL 1389610 at *1 (quotation marks and citations omitted).

In short, the court finds that no relief is available to Flores on any of his assertions of ineffective assistance of trial counsel.

### 3. *Ineffective assistance of appellate counsel*

Although a criminal defendant is constitutionally entitled to the effective assistance of counsel on direct appeal, as well as at trial, *Evitts*, 469 U.S. at 396; *Bear Stops*, 339 F.3d at 780, where Flores's claims of ineffective assistance of appellate counsel merely repeat three of his claims of ineffective assistance of trial counsel, and the court has already found those three claims entitle Flores to no relief, no separate analysis of Flores's claims of ineffective assistance of appellate counsel is required. Rather, for essentially the same reasons stated above, Flores cannot show that he has satisfied both prongs of any of his claims of "ineffective assistance" by appellate counsel, *see Ledezma-Rodriguez*, 423 F.3d at 836 (to prove an "ineffective assistance" claim, the movant must show both that counsel's performance was "deficient" and that he was "prejudiced" by the deficient performance); *Davis*, 423 F.3d at 877 (same), nor is he entitled to an evidentiary hearing on those claims, because the record "conclusively show[s] that [Flores] is entitled to no relief." 28 U.S.C. § 2255; *Ledezma-Rodriguez*, 423 F.3d at 835-36. Therefore, these claims will also be denied.

## C. Imposition Of An Illegal Sentence

In addition to his "ineffective assistance" claims, Flores asserts that this court imposed a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). This claim consists of an assertion that his sentence was imposed in violation of *Apprendi*, because the court made findings, by the greater

weight of the evidence, of essential facts that led to enhancement of his sentence, when all such facts should have been supported by jury findings beyond a reasonable doubt. The specific fact findings that he contends the court improperly made were findings concerning drug quantity and purity.

1. *"Cause and prejudice"*

Flores did not assert this error on his direct appeal of his conviction and sentence. *See United States v. Flores*, 362 F.3d 1030, 1039 (8th Cir. 2004) (the only issue properly presented on direct appeal was denial of a motion to sever for trial). Therefore, he must show "cause and prejudice" for his default or a "complete miscarriage of justice," based, for example, on his actual innocence, in order for the court to consider the defaulted claim on collateral attack. *Ramey*, 8 F.3d at 1314 ("Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice.") (citations omitted); *Johnson*, 278 F.3d at 844 ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley*, 523 U.S. at 622, with citations omitted). Flores appears to assert the ineffective assistance of trial and appellate counsel as "cause and prejudice" for his default. It is true that ineffective assistance of either trial or appellate counsel may constitute "cause and prejudice" to overcome a procedural default. *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005) ("Ineffective assistance of appellate counsel may constitute cause and prejudice to overcome a procedural default.") (citing *Boysiewick v. Schriro*, 179 F.3d 616, 619 (8th Cir. 1999)); *Williams v. Kemna*, 311 F.3d 895, 897 (8th Cir. 2002) ("Ineffective assistance of trial or appellate counsel may be cause excusing a procedural default.") (citing *Murray v. Carrier*, 477 U.S. 478, 491-92 (1986)). However, Flores

failed to show that either trial or appellate counsel was ineffective in failing to assert this very claim of an *Apprendi* violation. Thus, this alleged error of the trial court has been procedurally defaulted.

2. *The merits*

Even had the claim not been procedurally defaulted, it is without merit. The Eighth Circuit Court of Appeals held that where the indictment charges and the jury has found a particular range of quantity for the drugs involved in the offense, it was still "proper for the sentencing judge to then make more exact calculations for purposes of computing the offense level under the guidelines and determining where the sentence will actually fall within the statutory range determined by the jury's verdict." *United States v. Hollingsworth*, 257 F.3d 871, 878 (8th Cir. 2001), *cert. denied*, 534 U.S. 1100 (2002), *overruled on other grounds, United States v. Diaz*, 296 F.3d 680 (8th Cir. 2002) (*en banc*). Here, the indictment charged Flores with possessing, with intent to distribute, 500 grams *or more* of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). The jury, likewise, found him guilty of possession, with intent to distribute, 500 grams *or more* of a mixture or substance containing a detectable amount of methamphetamine. The jury's determination established Flores's statutory sentencing range as ten years to life. 21 U.S.C. § 841(b)(1)(A). Thus, the court's findings on drug quantity, that the offense involved 1,213.3 grams of a methamphetamine mixture with a purity equivalent to 694.165 grams of actual (pure) methamphetamine, resulting in a sentencing range of 188 to 235 months, did not exceed the statutory range based solely on the jury's findings. *Hollingsworth*, 257 F.3d at 878. Although *Booker* in part relied on *Apprendi* to hold that jury findings must also be the basis for determination of the maximum *guidelines* sentencing range, under mandatory guidelines, *Booker* is not retroactively applicable to

final convictions on collateral review. *Never Misses A Shot v. United States*, 413 F.3d 781, 783-84 (8th Cir. 2005) (*per curiam*).

Thus, Flores's final claim for relief pursuant to § 2255 also fails as a matter of law.

## III. CONCLUSION

Upon the foregoing,

1.    Flores's request for an evidentiary hearing on his August 8, 2005, *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 125) is denied; and

2.    Flores's August 8, 2005, *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 125) is denied in its entirety as to each and every claim asserted therein.

IT IS SO ORDERED.

DATED this 13th day of June, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

A copy of this document has been
mailed/faxed to all counsel of record, pro
se parties and others listed and not shown
as having been served electronically
under the cm/ecf system:

6/13/06- s/src
order mailed to pro se filer w/NEF

29